UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANNA M. LACKEY,

       Plaintiff,

 -against-              5:06-CV-00747
                           (LEK)
MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____

## DECISION AND ORDER

**I.**  **BACKGROUND**

**A.**  **Procedural History**

On July 12, 2004, Plaintiff filed an application for supplemental security income ("SSI") benefits. Administrative Transcript ("AT") 28, 35. On December 8, 2004, the application was denied. AT 36. Plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on September 2, 2005. AT 28. On January 9, 2006, ALJ Michael Brounoff issued a decision denying Plaintiff's claim for benefits. AT 28-34. On June 2, 2006, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final determination of the Commissioner. AT 4. Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff brings this appeal. Dkt. No. 1.

**B.**  **Contentions**

Plaintiff makes the following claims:

(1) The ALJ failed to fully develop the record. Dkt. No. 7 at 7.

(2) The ALJ failed to properly evaluate Plaintiff's cognitive skills and capacity. Dkt. no. 7 at

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in this action.

8.

(3) The ALJ's credibility analysis did not conform to SSR 96-7p and 20 C.F.R. § 416.929. Dkt. No. 7 at 13.

(4) The ALJ's Residual Functional Capacity ("RFC") Assessment is not supported by substantial evidence. Dkt. No. 7 at 12.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed. Dkt. No. 8.

**C.    Facts**

Plaintiff was born on January 3, 1954 and was 51 years old at the time of the administrative hearing on September 2, 2005. AT 167. Plaintiff resided with her husband in a trailer at 76 Tallman Street in Oswego, New York. AT 75. Plaintiff has a 9th grade education. AT 168. Plaintiff has not worked in any capacity since July 12, 2004 but was previously employed as a cook at a fast-food restaurant. AT 62, 173. Plaintiff alleges that she became disabled on January 1, 2002 due to "physical disorders" including back problems, water retention in her lower extremities and shortness of breath. AT 28.

   **1.    Medical Treatment**

      **a.    H. Douglas Wilson, M.D.[2]**

On December 9, 2002, Plaintiff was treated by her primary care physician, Dr. Wilson, at Oswego County Opportunities Health Center. AT 98. Plaintiff complained of a cough. Id. Dr. Wilson noted that Plaintiff smoked 1½ to 2 packs of cigarettes per day. Id. Dr. Wilson also noted that Plaintiff was morbidly obese but stated that "she does not appear to be acutely short of breath." Id. An x-ray of Plaintiff's chest revealed "no acute cardio-pulmonary disease." AT 105. Dr.

---

[2] The record contains notes and reports from Dr. Wilson regarding treatment for unrelated complaints/illnesses. A summary of those records has been omitted from this discussion.

2

Wilson diagnosed Plaintiff with bronchitis and prescribed Lasix and Albuterol.[3]  AT 99.

On August 26, 2003, Plaintiff appeared for a "recheck."  AT 100.  Plaintiff stated she had "lots of energy" and rarely felt short of breath.  Id.  Dr. Wilson noted Plaintiff weighed 342 pounds and smoked 2 packs of cigarettes per day.  Id.  Dr. Wilson suggested pulmonary function testing to quantify Plaintiff's lung disease.  Id.

On June 21, 2004, Plaintiff returned to Dr. Wilson for complaints of pain unrelated to the issues at hand.  AT 101.  Dr. Wilson noted that Plaintiff weighed over 400 pounds but was not short of breath or wheezing.  Id.  Dr. Wilson diagnosed Plaintiff with chronic obstructive pulmonary disease.  Id.  Dr. Wilson noted that Plaintiff's prior lab work showed normal renal function.  Id.

On September 24, 2004, Plaintiff returned to Dr. Wilson complaining of wheezing and shortness of breath without relief from Albuterol.  AT 103.  Dr. Wilson prescribed Tessalon, Foradil, Prednisone and Biaxin.[4]

On October 15, 2004, Plaintiff had a pulmonary function test at Oswego Hospital which revealed normal spirometry and "restriction - possible."[5]  AT 109.

On November 4, 2004, Plaintiff underwent an echocardiogram due to complaints of "chest tightness."  AT 136.  The results of the study were normal.  Id.  Plaintiff also had x-rays taken of her

---

[3] Lasix is a diuretic used to treat edema associated with congestive heart failure. Dorland's Illustrated Medical Dictionary, 762, 1022 (31st ed. 2007) (hereinafter "Dorland's").  Albuterol is administered by inhalation for the treatment of bronchitis, emphysema or other chronic obstructive airway diseases.  Id. at 46.

[4] Tessalon is an antitussive that reduces the cough reflex.  Dorland's at 212, 1907.  Foradil is used in the treatment of asthma and administered by oral inhalation.  Id. at 737, 744.  Prednisone is a glucocorticoid used as an anti-inflammatory and immunosuppressant for a variety of conditions.  Id. at 1531.  Biaxin is an antibiotic used in the treatment of respiratory infections.  Id. at 216, 374.

[5] Spirometry is the measurement of the breathing capacity of the lungs.  Dorland's at 1776.

3

lumbar and thoracic spine which revealed degenerative change at L5-S1; spondylolisthesis; and mild degenerative spurring in thoracic spine. AT 138.

On July 26, 2005, Plaintiff stated that she felt better on the Foradil which she used 2 times a day. AT 140. On August 10, 2005, Plaintiff had her last visit with Dr. Wilson. AT 142. Plaintiff had a chest x-ray which was normal. Id.

### b.     Oswego Hospital

On September 17, 2004, Plaintiff appeared at the emergency room of Oswego Hospital. AT 111. Plaintiff complained of right shoulder pain and lower back pain and stated she was "unable to do community service." AT 111, 113. The attending physician, Dr. James Snyder, noted that Plaintiff was obese. AT 111. Plaintiff stated that she was working at Thrifty Shopper. AT 114. Dr. Snyder noted that Plaintiff ambulated well and was able to undress and move her arms and shoulders as "observed by the nursing staff and physician prior to the examination." Id. Dr. Snyder noted that Plaintiff's examination was unremarkable and diagnosed Plaintiff with chronic low back problems with morbid obesity and "possible work avoidance syndrome." Id. Dr. Snyder prescribed Ibuprofen and gave Plaintiff a note that restricted Plaintiff's work "to sit in a comfortable chair for three hours per day to fold clothing as long as there is no bending over to pick up items." Id.

### 2.     Consultative Examination

On November 17, 2004, Dr. Roy Forrest conducted an internal medicine examination of Plaintiff at the request of the agency. AT 116. Plaintiff stated that she suffered from low back pain since 1980. Id. Plaintiff advised Dr. Forrest that she could walk for 5 minutes and sit and stand for 1 hour. Id. Plaintiff stated she suffered from emphysema since 1998, "short[ness] of breath" without chest pain, "water in both knees," asthma, arthritis in her left elbow and right heel pain. Id. Plaintiff stated that she cooked 7 days a week, cleaned, did laundry, shopped, showered, dressed,

watched television, listened to the radio and socialized with friends. AT 118.

Upon examination, Dr. Forrest noted Plaintiff had some shortness of breath at the end of the examination. AT 119. Dr. Forrest noted Plaintiff had a normal gait but could not walk on her heels or toes. Id. Plaintiff needed no help changing or climbing on or off the examining table. AT 120. Dr. Wilson noted Plaintiff had a full range of motion in cervical spine and knees and straight leg raising was negative bilaterally. Id. Dr. Forrest diagnosed Plaintiff with low back pain, emphysema, asthma, right knee pain, right hip pain, left elbow pain, lower extremity edema, right heel pain, possible hypertension and obesity. Id. Dr. Forrest opined that Plaintiff was moderately limited to lifting and carrying with moderate exertion due to emphysema. Id. Dr. Forrest also advised Plaintiff to avoid exposure to dust, smoke or irritants due to asthma. Id. Dr. Forrest concluded that Plaintiff was mildly limited to prolonged sitting and standing and moderately limited to squatting and bending with no limits with reach or use of extremity. Id.

### 3.  Residual Functional Capacity ("RFC") Assessment

On December 8, 2004, a disability analyst prepared a Physical RFC Assessment at the request of the agency.[6] AT 122. Plaintiff's primary diagnosis was obesity and her secondary diagnosis was "possible work avoidance syndrome." Id. The analyst found that Plaintiff could occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk and sit for about 6 hours in an 8 hour day; and was unlimited in her ability to push/pull. AT 123. The analyst opined that Plaintiff could occasionally climb, balance, stoop, crouch, kneel and crawl. AT 124. The analyst opined that Plaintiff should avoid concentrated exposure to fumes, odors and gases. AT 125.

---

[6] The name of the analyst is illegible. AT 127.

**II.     DISCUSSION**

**A.     Disability Standard**

To be considered disabled, a plaintiff seeking Disability Insurance Benefits ("DIB") or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see also 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the

6

plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AT 29. At step two, the ALJ concluded that Plaintiff's degenerative spinal joint disease of the thoracic and lumbar regions including grade I spondylolisthesis at L4-5; morbid obesity with recorded body weight of at least 390 pounds on a 5 foot 2 inch frame; and asthma with chronic obstructive pulmonary disease ("COPD") were "severe" impairments. AT 29. At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1 of the Social Security Regulations (the "Regulations"). AT 30. At the fourth step, the ALJ found that Plaintiff had the RFC to:

> lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours in a routine 8-hour workday; and occasionally stoop, limited only by obesity; but with advisable avoidance of moderate or greater exposure to respiratory irritants. AT 32.

The ALJ concluded that Plaintiff had no past relevant work experience. AT 32. Relying on the medical-vocational guidelines ("the Grids") set forth in the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App.2, the ALJ found that Plaintiff had the exertional capacity to perform the demands of the full range of light work. AT 34. Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Act. Id.

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, inter alia, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it

reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. Johnson, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

**C.     ALJ's Duty to Develop Record**

Plaintiff argues that the ALJ failed to apply the appropriate legal standards in regard to developing the record in two respects. First, Plaintiff contends that the ALJ should have

requested additional treatment records from Dr. Wilson. Dkt. No. 7 at 8-10. Second, Plaintiff claims that the ALJ failed to obtain an opinion from Dr. Wilson regarding Plaintiff's functional limitations.[7] Dkt. No. 7 at 7-11. Defendant claims that the ALJ fully developed the record and applied the appropriate legal standards. Dkt. No. 8 at 7.

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, the ALJ has an affirmative duty to develop the medical record if it is incomplete. By statute, the ALJ is required to develop the complete medical history for at least a twelve-month period prior to the date of application. See 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d)(2); see also Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). Plaintiff has the burden of "provid[ing] medical evidence" to show she is disabled, but the ALJ has a heightened obligation "to assist the [pro se] plaintiff affirmatively in developing the record." Carroll v. Secretary of Health and Human Servs., 872 F. Supp. 1200, 1204 (E.D.N.Y. 1995) (quoting Smith v. Bowen, 687 F. Supp. 902, 906 (S.D.N.Y. 1988)); see also Camacho v. Apfel, 1999 WL 294731, at *3 (E.D.N.Y. 1999) (citing 20 C.F.R. § 404.1512(c)).

When the plaintiff is unassisted by counsel, the ALJ has the duty "to scrupulously and conscientiously probe into, inquire of, and explore . . . all the relevant facts." Gold v. Secretary of Health, Educ. and Welfare, 463 F.2d 38, 43 (2d Cir. 1972). The ALJ must make reasonable efforts to develop the record including issuing and enforcing subpoenas requiring the production of evidence, and advising the plaintiff of the importance of the evidence. See Almonte v. Apfel, 1998 WL 150996, at *7 (S.D.N.Y. 1998). The ALJ must also enter these attempts at evidentiary development into the record. See id. In furtherance of the duty to develop the record, the ALJ could re-contact medical sources if the evidence received from the treating physician or other

---

[7] Defendant did not respond to this portion of Plaintiff's argument.

9

medical sources is inadequate to determine disability and additional information is needed to reach a determination.  20 C.F.R. § 404.1512(e).  To adequately develop the record in this manner, "the ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability; 'raw data' or even complete medical records are insufficient by themselves to fulfill the ALJ's duty."  Dimitriadis v. Barnhart, 2004 WL 540493, at *9 (S.D.N.Y. 2004) (citing Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).

Based on the importance of a treating physician's assessment, the ALJ has an affirmative obligation to obtain more than "sparse notes" in the medical records from a treating physician. Rosa v. Callahan, 168 F.3d 72, 79-80 (2d Cir. 1999).  The ALJ's responsibility to help a claimant obtain complete medical records dovetails with the treating physician rule, which requires controlling weight be given the opinion of a claimant's treating physician when it is supported by accepted diagnostic techniques and not inconsistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2);  Rosado v. Barnhart, 290 F. Supp. 2d 431, 438 (S.D.N.Y. 2003).  The combination of these two principles "compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule."  Pabon v. Barnhart, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) (alteration in original) (quoting Peed, 778 F. Supp. at 1246).

### 1.     Request for Additional Treatment Records

In this case, the medical treatment record consists of Dr. Wilson's treatment notes and records from one emergency room visit at Oswego Hospital.  AT 98-115.  At the time of the administrative hearing, the record contained Dr. Wilson's treatment notes from December 2002

until December 2004.[8]  AT 165.  Plaintiff testified that the record was complete with the exception of treatment Plaintiff received in August 2005.  AT 165.  On August 22, 2005, the ALJ requested that Dr. Wilson provide copies of treatment records after June 2, 2005.  AT 149.  Subsequently, the record was supplemented to include Dr. Wilson's treatment notes from July and August 2005.  AT 140-42.  The ALJ did not request any other information from Dr. Wilson and did not specifically ask Dr. Wilson to provide records prior to December 2002.  AT 149.

Plaintiff claims that she had "been seeing [Dr. Wilson] for ten years" and thus, the ALJ should have requested records from "the onset date until December 2003."  Dkt. No. 7 at 10.  Based upon Plaintiff's testimony, there are no serious evidentiary gaps in the administrative record.  On July 12, 2004, Plaintiff applied for SSI benefits.  AT 28.  The record contains reports from December 2002 until August 2005, well beyond the statutorily mandated time period.  After reviewing the administrative transcript, the Court finds that the record adequately and completely reflected Plaintiff's medical history.  As such, the ALJ had no obligation to further develop the record with respect to obtaining Plaintiff's prior medical records from Dr. Wilson.

### 2. Request for Dr. Wilson's Opinion

Plaintiff argues that the ALJ failed to develop the record as there are no opinions of Plaintiff's functional limitations from any medical source.  Dkt. No. 7 at 7.  In the decision, the ALJ did not acknowledge or even discuss Dr. Wilson.  With respect to Dr. Wilson's treatment, the ALJ simply stated:

> The medical evidence shows that the claimant has been followed through Oswego County Opportunities Health Center, with obesity and continuing heavy smoking the obvious primary causes of some experienced shortness of breath, not associated with any specific functional limitations.  AT 30.

---

[8] Plaintiff was unassisted and unrepresented by counsel at the administrative hearing.  AT 159.

11

The ALJ never specifically mentioned Dr. Wilson and, of greater significance, the ALJ failed to assign any weight to Dr. Wilson's opinions.[9] Upon a thorough review of the record, the Court concludes that the ALJ failed to adequately develop the facts. While the record contains Dr. Wilson's treatment notes, Dr. Wilson did not submit any findings on Plaintiff's residual functional capacity. Indeed, the record does not contain any functional assessment of Plaintiff's ability other than the RFC Assessment of the non-examining disability analyst. Given the inadequacy of the record, the ALJ should have sought Dr. Wilson's opinions. See Peed, 778 F. Supp. at 1246. As the Plaintiff was not represented by counsel, it was incumbent upon the ALJ to encourage Plaintiff to obtain an opinion from Dr. Wilson. In the alternative, the ALJ should have attempted to obtain an opinion directly from Dr. Wilson. See Brathwaite v. Barnhart, 2007 WL 5322447, at *12 (S.D.N.Y. 2007) (internal citations omitted) (holding that clarification was necessary rather than dismissing the treating physician's opinion outright, especially in light of the fact that the plaintiff was proceeding pro se and that no other treating physician's report appeared in the record).

Upon remand, the ALJ should contact Dr. Wilson and request Dr. Wilson's opinion regarding Plaintiff's functional limitations. Further, upon remand, the ALJ is directed to develop the record to ascertain the proper amount of weight to accord Dr. Wilson's opinion under 20 C.F.R. § 416.927(d).

**D.    ALJ's Assessment of Plaintiff's Cognitive Abilities**

Plaintiff argues that Plaintiff's testimony regarding her education and ability to read and write "raise[d] an issue regarding her cognitive abilities that could reasonably effect [sic] the outcome of the case." Dkt. No. 7 at 11. Thus, Plaintiff claims that the ALJ should have

---

[9] Plaintiff does not specifically object to the ALJ's failure to assign weight to Dr. Wilson's opinions.

requested that Plaintiff submit to a consultative organicity (intelligence) evaluation. Dkt. No. 7 at 8. Defendant contends that there was no conflict in the record that required a consultative examination. Dkt. No. 8 at 15.

The Regulations place the burden of supplying all relevant medical evidence on the claimant. See 20 C.F.R. §§ 404.1512(c), 416.912(c). Moreover, the Social Security Administration is required to "consider only impairment[s] [which] [a claimant] say[s] [he or she] ha[s] or about which [it] receive[s] evidence." See 20 C.F.R. §§ 404.1512(a), 416.912(a); see also Leonard v. Comm'r of Social Sec., 2008 WL 3285947, at *4-5 (N.D.N.Y. 2008). If the record shows the possibility that a claimant suffers from a mental impairment, the ALJ must develop the record regarding such an impairment, even if the claimant has not alleged that disorder as the basis of disability. See Leonard, 2008 WL 3285947, at *5 (citing Prentice v. Apfel, 11 F. Supp. 2d 420, 426 (S.D.N.Y. 1998)).

The ALJ may develop the record by ordering a consultative examination. See 20 C.F.R. §§ 404.1512(e)-(f), 416.912(e)-(f). Under the Social Security regulations, an ALJ has discretion to order a consultative examination where she deems it is warranted. 20 C.F.R. § 404.1517. In fulfilling her duty to conduct a full and fair inquiry, the ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision. Hanratty v. Chater, 1997 WL 631024, at *5-6 (W.D.N.Y. 1997) (internal citations omitted). A claimant has the right to a post-hearing consultative examination only when the claimant's medical sources "cannot or will not provide sufficient medical evidence regarding impairment for a determination about whether the claimant is disabled." Cruz v. Shalala, 1995 WL 441967, at *5 (S.D.N.Y. 1995); see also 20 C.F.R. § 404.1517. An ALJ is not required to send a pro se litigant for a consultative examination unless the facts suggest the need for such an examination. Cruz, 1995 WL 441967, at *5.

13

In this case, Plaintiff raised the issue of mental impairment for the first time in her brief in support of the within motion. The record demonstrates that Plaintiff was never treated by nor referred to any psychologist or psychiatrist. Plaintiff completed 9th grade and never attended special education classes. AT 75. Plaintiff testified at the hearing that she could read a newspaper, menu, bus schedule and do basic mathematics including multiplication and division. AT 168-69. Based upon the record and Plaintiff's statements, the ALJ had no reason to form a belief that Plaintiff had a mental impairment. See Cruz, 1995 WL 441967, at *4-5. Plaintiff offers no legal basis for her argument that such an examination was required. Yancey v. Apfel, 145 F.3d 106, 114 (2d Cir. 1998). The medical evidence and testimony in the record do not establish that a consultative examination was necessary in order for the ALJ to reach a decision as to Plaintiff's disability. Thus, the ALJ was not required to investigate Plaintiff's cognitive skills and possible "learning disorder" because the record lacked any evidence of an impairment. Accordingly, there is substantial evidence to support the administrative law judge's decision to not request a consultative examination.

**E.     Credibility**

Plaintiff argues that the ALJ improperly assessed Plaintiff's credibility and claims that the ALJ "failed to follow the analytical procedure set forth in SSR 96-9p and 20 C.F.R. § 416.929." Dkt. No. 7 at 13. Defendant contends that Plaintiff's allegations were not entirely credible and inconsistent with other evidence of record. Dkt. No. 8 at 9.

It is well settled that "a claimant's subjective evidence of pain . . . is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory

diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." Casino-Ortiz v. Astrue, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) . The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).

If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether Plaintiff's statements about the intensity, persistence, or functionally limiting effects of her back pain are consistent with the objective medical and other evidence. See SSR 96-7p, 1996 WL 374186, at *2 (SSA 1996). "[A] claimant's subjective symptoms must be supported by medical signs or conditions that reasonably could be expected to produce the disability or alleged symptoms based on a consideration of all the evidence." Pareja v. Barnhart, 2004 WL 626176, at *10 (S.D.N.Y. 2004) (concluding that despite plaintiff's subjective complaints, the ALJ noted that several physicians determined that plaintiff could do medium work based on her medical records and on their own evaluations of her test results). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case

record." SSR 96-7p, 1996 WL 374186, at *5 (SSA 1996).

After considering a claimant's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject the claimant's subjective testimony. Martone v. Apfel, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999); see also 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An ALJ who rejects a claimant's subjective testimony "must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence." Melchior v. Apfel, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)) (citations omitted).

In this case, the ALJ noted that Plaintiff's testimony was "only partially credible." AT 31. Specifically, the ALJ found:

> Given the claimant's activities, minimal clinical findings and the lack of ongoing medical treatment, failure of any treating physicians credibly to impose long-term limitations or restrictions on the claimant's ability to perform work activities, and the limited nature of limitations and restrictions credibly imposed herein, along with the assessment of the consultant examiners for the Administration, the claimant's allegations of totally disabling symptoms are not credible, at least to the extent of the level of severity claimed. AT 31-32.

Having reviewed the administrative transcript, the Court finds that the ALJ properly assessed the factors enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(vi) and § 416.929(c)(3)(i)-(vi). The ALJ discussed Plaintiff's daily activities and noted that "[d]aily activities are quite broad and even vigorous, with being on the go 'from 5:30 a.m. to 11:30 p.m'" and noted that Plaintiff "regularly baby-sits three grandchildren." AT 31. The ALJ also discussed Dr. Snyder's diagnosis of "possible work avoidance syndrome," Plaintiff's limited medications and Plaintiff's lack of continued medical care. AT 31. As the ALJ adequately explained the reasons for discrediting Plaintiff's statements, the ALJ's decision to reject Plaintiff's complaints is supported by substantial evidence.

16

F.  **RFC Assessment**

Residual functional capacity is:

What an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96-8p"), 1996 WL 374184, at *2 (SSA July 2, 1996)).  In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis.  20 C.F.R. § 404.1545.

Plaintiff argues that the ALJ did not have sufficient medical opinion evidence to make an RFC determination.  Dkt. No. 7 at 13.  Specifically, Plaintiff argues that the ALJ did not provide a rationale for rejecting the opinion of the emergency room physician.  Id.  Defendant claims that substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform light work.  Dkt. No. 8 at 12.

A treating source is defined as a plaintiff's "own physician or psychologist who has provided [plaintiff] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with [the plaintiff]." Fernandez v. Apfel, 1998 WL 812591, at *3 (E.D.N.Y. 1998) (citing 20 C.F.R. § 404.1502).  The opinion of a physician who examined a patient once or twice is not entitled to the weight accorded the opinion of a treating physician. Mongeur v. Heckler, 722 F.2d 1033, 1039 n. 2 (2d Cir. 1983); see also Arnone v. Bowen, 882

F.2d 34, 41 (2d Cir. 1989) (internal quotations and citations omitted) (finding that a doctor who treated the plaintiff once was not a "treating physician" within the meaning of the rule, because "there simply was no ongoing physician-treatment relationship" between the claimant and the doctor during the relevant period and the doctor was therefore "not in a unique position to make a complete and accurate diagnosis").

In this case, the ALJ found that Plaintiff had the RFC to:

> lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk 6 hours in a routine 8-hour workday; and occasionally stoop, limited only by obesity; but with advisable avoidance of moderate or greater exposure to respiratory irritants.  AT 32.

As previously discussed, the ALJ failed to adequately develop the record with respect to Plaintiff's treating physician, Dr. Wilson.  Accordingly, the Court is unable to find that the RFC determination is supported by substantial evidence; therefore, remand is necessary.  Although the matter is remanded to allow the ALJ to develop the record and properly evaluate Dr. Wilson's opinions, the Court finds that the ALJ did not err in rejecting the opinion of Dr. Snyder, the emergency room physician.  Dr. Snyder treated Plaintiff once and cannot be considered a "treating physician."  Thus, his opinion was not entitled to "controlling weight" and the ALJ did not err in failing to assign such weight to Dr. Snyder's opinion.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the decision denying disability benefits is **REVERSED** and this matter **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[10] for

---

[10] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

further proceedings consistent with the above; and it is further

**ORDERED**, that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**


DATED:      October 06, 2008
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge